# Richmond

## Eureka Lodge No. 5, Improved, Etc. v. Eureka Lodge Modern Elks, Etc.

May 1, 1944.

Record No. 2778.

Present, Campbell, C. J., and Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Thomas H. Reid*, *W. H. Land* and *W. W. Foreman*, for the appellant.

*E. S. Peters* and *Jas. G. Martin & Son*, for the appellees.

BROWNING, J., delivered the opinion of the court.

This case presents a chapter of internal dissensions in two fraternal societies. We shall not be overmuch concerned with the deserts of this friction, deeming it not essential to the decision of the issues.

Back in 1899 a number of colored men received from the Grand Lodge, Benevolent and Protective Order of Elks of the World, a New Jersey corporation, a charter to operate as Eureka Lodge No. 5, B. P. O. E., Colored. Prior to 1907 the name of the parent organization was changed to Improved Benevolent and Protective Order of Elks of the World and the local organization of Norfolk, Va., changed its name in accordance therewith.

In October 1913, the local lodge was incorporated under the name of Eureka Lodge No. 5, I. B. P. O. E. of the World, Inc. The officers of the corporation were identical with those of the lodge. The purpose of this incorporation was to take title to real estate which the lodge contemplated purchasing.

Properties were purchased on two or more occasions but they were lost on account of foreclosure proceedings.

On December 21, 1934 the Mutual Building Asociation of Norfolk, Va., conveyed to the corporation, which is Eureka Lodge No. 5 Improved Benevolent and Protective Order of Elks of the World, Inc., certain real estate in the city of Norfolk consisting of a three story double brick building numbered 626-628 Church Street and certain lots, and improvements thereon, situated on Wide Street, Norfolk, Va. This deed of conveyance embraces the property which is in issue.

The corporation executed a deed of trust on the said lots to secure the unpaid purchase price which was $13,500.00. On the 18th day of January, 1941, a release deed was executed by the Building and Loan Association to the corporation relieving the property from the effect of the mortgage.

E. S. Peters, an attorney at law and a member of the lodge and the corporation, testified that the corporation paid the

purchase price of the property with the dues and other funds of the lodge, derived from concessions, etc.

In 1937 friction between the Local Lodge and the Grand Lodge arose. The Local Lodge complained of the dictatorial attitude of the Deputy Exalted Ruler who was designated by the Grand Exalted Ruler of the Grand Lodge. An example of the demands made by the Grand Lodge upon the Local Lodge was the purchase by it of 5000 tickets at $1.00 each which sum was to be used in staging a grand ball and banquet in honor of the Grand Exalted Ruler. Such an entertainment and feast would make that of Belshazzar and a Jackson Day Dinner at $100.00 per plate seem insipid. A stiff protest at this assessment brought a reduction of the demand to $2500.00. The cumulative effect of this discord was what is spoken of in the testimony as the rebellion of the great majority of the members of the Local Lodge, about 500, while 7 or 8 remained loyal to the Grand Lodge.

In August 1939 the Local Lodge was suspended and in October 1939 a small group of loyal members petitioned the Grand Lodge for reinstatement to them of the charter, which was granted. In the meanwhile the majority group exercised control of the corporation and purchased additional properties, which are not in issue, and had its name changed through the State Corporation Commission to Eureka Lodge No. 5, Independent Elks. The word Elks, however, was deleted from the name by order of the United States Circuit Court of Appeals of the 4th District to which a suit by the Grand Lodge, for that purpose, had been appealed.

In July 1940 the group operating under the reinstated charter as Eureka Lodge No. 5, I. B. P. O. E. of the World, a Voluntary Association, filed a bill against Eureka Lodge Modern Elks, a corporation, (now Eureka Lodge of Norfolk, Va., Inc.), and the sundry individuals who were the officers in the rebellious lodge, and the officers of the corporation, alleging the above facts, and urging that the corporation held the title to the property purchased in 1934, as trustee for them, and praying that it be required to convey

the property to trustees for their lodge and for an accounting of the revenues, etc.

Depositions were taken on behalf of both sides, upon the bill and answer and amended bill. The chancellor entered a decree denying the prayer for relief and dismissing the bill.

The appellant submits three assignments of error.

First: It is charged that the chancellor erred in dismissing the bill without stating the reasons for such action and without stating that it was done without prejudice.

We think this is frivolous. The accustomed method of the *nisi prius* courts in Virginia in deciding for the defendant is to dismiss the bill, opinions are not encumbent upon them and their reasons are rarely stated.

Second: It is alleged that the chancellor erred in not referring the case to a commissioner upon the oral motion of appellant "made during the argument of the cause". Counsel for the appellee contends that the record does not show that such a motion was made. We do not find its presence in the record. We may say that the chancellor had the evidence, consisting of the testimony of witnesses, and the exhibits, which were many and complete, and he doubtless felt that a reference of the cause was unnecessary to his decision.

Third: The contention was made that the defendant corporate lodge had no beneficial interest in any of the property involved in the cause, which it now occupies and possesses, but simply holds title as trustee for the true beneficial owner, the appellant. The weight of the evidence is decidedly against this contention. The Grand Lodge had no title to the property, never has had, and does not now and never has claimed title to it.

It will be noted that the balance on the mortgage indebtedness on certain of the properties in issue was paid off by the corporation after the lodge was divorced from the Grand Lodge.

W. H. Land, an attorney at law and an official of the appellant in testifying as a witness in its behalf, said that "the reinstated lodge has made no payment on the indebted-

ness of the building". He undertook to make an explanation of this which we think is unimpressive. The basis for the claim of the appellant seems to be that it is an affiliate of the Grand Lodge and has been loyal to it but this cannot be received as a valid reason for divesting the appellee of real property rights which it has legally acquired and transferring them to another upon a claim quite whimsical.

The cases are at variance as to the issues involved here but we think the weight of authority lends itself to the views expressed in *Benefit Societies* and *Life Insurance (Bacon)* Vol. 1 (3d) page 141, section 72, where it said:

"In a somewhat similar case in Maryland the Court of Appeals held that, when the charter granted by the State to a lodge is still in force the lodge has the right to hold its substantial property or pecuniary rights under the corporate powers conferred by that charter, unaffected by the forfeiture of its conventional charter by the grand lodge. That 'whatever powers the higher lodges in such an organization as this may have to make rules or laws for the government of the subordinate lodges and the discipline of their members, we think it is quite certain that the courts can never recognize as valid any rule or law so made, the effect of which is to confiscate property, or to arbitrarily take away property rights from one set of members and give them to another set; nor will the courts allow or recognize the enforcement of any such rule when its enforcement will accomplish and is designed to accomplish such a result.'"

The decree of the chancellor is plainly right and it is accordingly

*Affirmed.*